# 2009 DTA 105

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL IV**

PEDRO JUAN ARZUAGA COLÓN
Apelado

v.

CORPORACIÓN DEL CENTRO DE BELLAS ARTES, *ET ALS*
Apelantes

-------------------------------------

PEDRO JUAN ARZUAGA COLÓN
Apelado

v.

CORPORACIÓN DEL CENTRO DE BELLAS ARTES, *ET ALS*
Apelantes

Núm. KLAN-2008-01036 / KLAN-2008-01038

San Juan, Puerto Rico, a 13 de julio de 2009

Panel integrado por su Presidente, el Juez López Feliciano,
y los Jueces Arbona Lago y Hernández Serrano

Hernández Serrano, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La Corporación del Centro de Bellas Artes (CCBA) comparece mediante el recurso KLAN-2008-01036 ante este Tribunal de Apelaciones solicitando la revocación de una sentencia emitida el 29 de mayo de 2008 y notificada el 2 de junio siguiente, por la Sala Superior de San Juan del Tribunal de Primera Instancia (TPI).

Mediante dicha sentencia se ordenó a la CCBA y a su funcionario Carlos Alicea Cotto (señor Alicea) a pagar al señor Pedro Juan Arzuaga Colón (apelado) la suma de $75,000.00 por concepto de daños emocionales y angustias mentales sufridas, así como el pago de intereses dejados de percibir al amparo del Artículo 8(b) de la Ley Núm. 426, *infra*, más costas, intereses y $5, 000 de honorarios de abogados.

Ese mismo día, el señor Alicea presentó ante este Tribunal el recurso núm. KLAN-2008-01038. En el mismo solicitó también la revocación de la sentencia emitida por el 29 de mayo de 2008 por el TPI.

El 18 de julio de 2008, el señor Alicea presentó una "Moción de Consolidación". Por versar los recursos, KLAN-2008-01036 y KLAN-2008-01038 sobre los mismos hechos y las mismas partes, ordenamos su consolidación.

Estudiados los planteamientos de las partes, resolvemos las controversias presentadas ante nuestra consideración.

### I

A continuación un resumen de los hechos que originan este recurso:

El 12 de noviembre de 2002, la CCBA le notificó al señor Alicea su intención de separarlo del puesto que ocupaba en dicho organismo, luego de que una auditoría revelara que su nombramiento era nulo *ab initio*, toda vez que se hizo en contravención con las normas y procedimientos de reclutamiento de empleados de carrera en el Servicio Público.

El 15 de noviembre de 2002 se llevó a cabo una vista informal. En la misma se le ofreció al apelado la oportunidad de ser escuchado y de presentar prueba que derrotara la conclusión emitida sobre la ilegalidad de su nombramiento. No obstante, éste no aportó prueba alguna que demostrara que dicha determinación fuera incorrecta. En consecuencia, ese mismo día se le informó al apelado la decisión de separarlo de su puesto. Asimismo, se le informó sobre su derecho de apelar la referida decisión ante la Junta Apelativa del Sistema de Personal del Servicio Público (J.A.S.A.P.). **[1]**

El 22 de noviembre de 2002, el apelado recurrió *pro se* de la determinación de la CCBA ante la J.A.S.A.P. El 22 de enero de 2003, la CCBA contestó la referida apelación. Entre otras cosas, alegó que el apelado fue separado de su puesto debido a que su nombramiento era nulo. Añadió que a éste no se le pudo nombrar en un puesto de forma transitoria por no haber reunido los requisitos mínimos para el mismo.

Estando pendiente de adjudicación la apelación presentada ante la J.A.S.A.P., el 29 de enero de 2003, el apelado presentó una demanda ante el TPI sobre daños y perjuicios contra la CCBA, la señora Carmen H. Martínez, Directora de Recursos Humanos de la CCBA y el señor Alicea. En síntesis, alegó que fue separado de su empleo en la CCBA "como punto culminante de un patrón de represalias por éste denunciar la violación de

política pública del [E]stado por parte del Gerente General de la Corporación del Centro de Bellas Artes[,] el codemandado Carlos Alicea". Específicamente, señaló que fue despedido porque "denunció la utilización de fondos y recursos de la [Corporación] por parte del Gerente General Carlos Alicea para tener y obtener acceso a material sexual de índole pornográfico". Añadió que había sido objeto de trato hostil y agresivo.

El 17 de marzo de 2003, la CCBA contestó la demanda negando las alegaciones.

Mientras tanto, el 25 de abril de 2003, la J.A.S.A.P. emitió una orden al apelado para que mostrara causa por la cual, a la luz de las alegaciones de la CCBA, no debía desestimarse su apelación. El apelado nunca cumplió con la referida orden.

Así las cosas, el 24 de mayo de 2004, la J.A.S.A.P. emitió una resolución archivando la apelación. El apelado nunca recurrió de dicha determinación.

De otra parte, y en referencia al caso presentado ante el TPI, el 12 de julio de 2004, las partes presentaron su "Informe de Conferencia con Antelación al Juicio". El referido informe fue suplementado mediante moción presentada el 12 de agosto de 2004. El 23 de abril de 2005 se presentó un "Informe Enmendado de Conferencia Preliminar entre Abogados".

El 1 de agosto de 2005, la CCBA solicitó que se dictara sentencia sumaria a su favor. Fundamentó su solicitud en que, entre otras cosas, el cese de las funciones del apelado como empleado de dicha corporación se produjo como resultado de que su nombramiento, al igual que el de otros veintidós empleados, fue anulado por haber sido efectuado en contravención con las normas y procedimientos que rigen el reclutamiento en el Servicio Público.

El 10 de agosto de 2005, el TPI emitió una orden mediante la cual concedió al apelado un término de diez (10) días para que se expresara en torno a la referida solicitud.

El 21 de septiembre de 2005, la CCBA advirtió al TPI que el apelado no había replicado a la moción de sentencia sumaria por lo que solicitó que la misma se diera por sometida. A raíz de lo anterior, el 29 de septiembre de 2005, el TPI le concedió al apelado un término improrrogable de cinco (5) días para que presentara su posición en torno a la moción de sentencia sumaria. El apelado no presentó su oposición a la misma.

El 15 de agosto de 2006, la CCBA reiteró su solicitud de sentencia sumaria. Mediante orden notificada el 2 de octubre de 2006, el TPI ordenó al apelado que dentro de un plazo de diez (10) días mostrara causa por la cual no debía dictarse la sentencia sumaria solicitada. El 11 de octubre siguiente, el apelado presentó una "Réplica a Solicitud de Sentencia Sumaria".

Así las cosas, el 1 de diciembre de 2006, el TPI declaró sin lugar la solicitud de sentencia sumaria presentada por la CCBA.

En desacuerdo con la referida determinación, la CCBA presentó una petición de *certiorari* ante este Tribunal de Apelaciones. [2] Mediante resolución notificada el 1 de marzo de 2007, este Tribunal denegó la expedición del auto solicitado.

El 10 de marzo de 2008, se celebró la vista en su fondo. Ese día, en corte abierta, el apelado dio por desistida con perjuicio su demanda en cuanto a la señora Carmen H. Martínez. En consecuencia, se dictó la correspondiente sentencia parcial. Durante la vista, las partes desfilaron prueba oral y documental en apoyo de sus respectivas posiciones.

El 2 de abril de 2008, el apelado presentó un "Memorial Particular" esbozando su posición.

El 30 de abril de 2008, notificada el 1 de mayo siguiente, el TPI dictó sentencia declarando con lugar la demanda presentada por el apelado. En consecuencia, ordenó a la CCBA y al señor Alicea a pagar al apelado la suma de $75,000.00 por concepto de daños emocionales y angustias mentales, el pago de los salarios dejados de percibir y la suma de $5,000.00 por concepto de costas, intereses y honorarios de abogado.

Posteriormente, el 16 de mayo de 2008, el apelado presentó una "Moción Solicitando Enmienda a la Sentencia", a los efectos de que se le concediera un remedio adicional: el pago del triple de los salarios dejados de devengar. Fundamentó su solicitud en la Ley Núm. 426 de 7 de noviembre de 2000.

El 2 de junio de 2008, el TPI emitió una Orden en la que declaró con lugar la solicitud de enmienda presentada por el apelado. De conformidad con lo anterior, notificó una "Sentencia Enmendada".

Inconformes, la CCBA y el señor Alicea acuden ante este Tribunal.

En el recurso núm. KLAN-2008-01036, la CCBA señala que el TPI cometió los siguientes errores al emitir su dictamen:

*"1. Al invocar, para conceder un remedio al demandante, el Artículo 1802 del C.c. [sic] y, particularmente, contra la CCBA. La Ley Núm. 426 de 7 de noviembre de 2000.*

*2. Al apreciar que la prueba presentada demostraba que contra el demandante se llevó a cabo represalias según contemplada por la Ley Núm. 115 de 20 de diciembre de 1991.*

*3. Al conceder al demandante derecho a recibir salarios dejados de devengar, una compensación, de más excesiva, de $75,000 por daños sufridos (angustias mentales) y el pago de honorarios de abogados."*

De otra parte, en el recurso núm. KLAN-2008-01038, el señor Alicea señala la comisión de los siguientes errores:

*"Erró el Tribunal de Primera Instancia al extenderle al apelado los remedios que concede la Ley Núm. 426 de 7 de noviembre de 2000, aun cuando dicho estatuto no resultá de aplicación a la situación de hechos que nos ocupa.*

*Erró el Tribunal de Primera Instancia al determinar que el apelante debe responder, en su carácter personal, por la separación del apelado de su puesto en la Corporación del Centro de Bellas Artes aun cuando dicha acción no ocurrió por razón de represalias del apelante contra el apelado, sino por el hecho de que la Junta de Directores de la referida corporación pública ordenó al apelante que anulara el nombramiento del señor Arzuaga Colón y el de otros veintidós (22) empleados por haberse efectuado los mismos en abierto incumplimiento con las normas y procedimientos de reclutamiento que rigen el Servicio Público. Incidió, además, el foro de origen al permitir al apelado relitigar la controversia sobre la legalidad de su separación del puesto que ocupaba en la Corporación del Centro de Bellas Artes, debido a que ese asunto es cosa juzgada."*

## II

Procede que expongamos a continuación la normativa aplicable a las cuestiones planteadas por las partes.

### A

La Ley Núm. 5, *supra*, en su sección 7.14, 3 L.P.R.A. sec. 1394, [3] creó la J.A.S.A.P. que tenía entre sus facultades atender la apelación que pudiera instar cualquier empleado de carrera dentro del sistema, cuando

alegara que una acción o decisión que le afectara violaba cualquier derecho que se le hubiera concedido en virtud de las disposiciones de la ley, o de los reglamentos adoptados por la Oficina Central de Administración de Personal, o por los Administradores Individuales para su cumplimiento.

La sección 7.15 de la Ley Núm. 5, *supra*, 3 L.P.R.A. sec. 1395, establecía el procedimiento a llevarse a cabo ante una apelación, disponiendo que:

*"(1) La parte afectada según la sección 7.14 de esta Ley (3 L.P.R.A. sec. 1394) deberá presentar escrito de apelación a la Junta dentro de treinta (30) días a partir de la notificación de la acción o decisión objeto de la apelación.*

*(2) La Junta podrá ordenar una investigación, y como resultado de la misma podrá desestimar la apelación por considerarla frívola, o podrá ordenar la celebración de una vista pública, con citación de las partes envueltas.*

*(3) La Junta dispondrá por reglamento los procedimientos que gobernarán la vista pública, sea ésta celebrada ante la Junta en pleno o ante un Oficial Investigador."*

La sección 7.16 de la Ley Núm. 5, *supra*, 3 L.P.R.A. sec. 1396, establecía que "(L)as decisiones de la Junta (J.A.S.A.P.) serían finales a menos que la autoridad nominadora, el ciudadano, o el funcionario o empleado solicitara su revisión judicial radicando una petición al efecto".

Referente a las decisiones de las agencias administrativas, incluida la J.A.S.A.P., la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2101 *et seq.*, en su Artículo 3.1, 3 L.P.R.A. sec. 2151, establece que en todo procedimiento administrativo formal se salvaguardarán los siguientes derechos:

*"(A) Derecho a notificación oportuna de cargos o querellas o reclamos en contra de una parte.*

*(B) Derecho a presentar evidencia.*

*(C) Derecho a una adjudicación imparcial.*

*(D) Derecho a que la decisión sea basada en el expediente".*

El Reglamento Procesal de la J.A.S.A.P., que establecía los mecanismos y normas procesales para su función adjudicativa, disponía en su Artículo 1.6 que la J.A.S.A.P. tenía facultad para desestimar o archivar reclamaciones o defensas por frivolidad, incumplimientos, abandono y prematuridad. En particular dispone, el Artículo 1.6 en sus incisos (d) y (e), que podrá desestimarse una reclamación:

*"Cuando en el escrito de apelación no se exponga alegación de hecho alguna que constituya violación de ley o reglamento, o causa que, de ser creída, justifique en derecho la reclamación".*

*"Cuando en la contestación al escrito de apelación las alegaciones o defensas formuladas no se justifiquen en derecho."*

Conforme a la propia Ley Núm. 5, *supra*, y a la sección 4.2 de la L.P.A.U., 3 L.P.R.A. sec. 2172, una parte adversamente afectada por una decisión final de una agencia administrativa, como lo era la J.A.S.A.P., que haya agotado todos los remedios administrativos correspondientes, podía presentar un recurso de revisión ante el Tribunal de Apelaciones. Dicha revisión judicial es el recurso exclusivo para revisar los méritos de las decisiones administrativas.

## B

La doctrina de cosa juzgada (*res judicata*), de origen romano, es de tradición civilista. *Mun. de San Juan v. Bosque Real, S.E.*, 158 D.P.R. 743 (2003); *Acevedo v. Western Digital Caribe, Inc.*, 140 D.P.R. 452 (1996); *Ramos González v. Félix Medina*, 121 D.P.R. 312, 326 (1988); *Lausell Marxuach v. Díaz de Yáñez*, 103 D.P.R. 533, 535 (1975). El Artículo 1204 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3343, incorporó en nuestra jurisdicción la citada doctrina jurídica. Dispone en lo pertinente:

"*Contra la presunción de que la cosa juzgada es verdad, sólo será eficaz la sentencia ganada en juicio de revisión.*

***Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron.***

...

*Se entiende que hay identidad de personas siempre que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o estén unidos a ellos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones entre los que tienen derecho a exigirlas u obligación de satisfacerlas.*" (Énfasis nuestro).

Véase además, Art. 421 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 1793; Manresa, *Comentarios al Código Civil Español*, Tomo VIII, Vol. 2, Madrid, Ed. 1967, págs. 285-319.

De la referida disposición estatutaria surge que la defensa de cosa juzgada sólo se configura cuando concurren cuatro identidades: cosas, causas, personas y representación. *A. & P. Gen. Contractors v. Asoc. Caná*, 110 D.P.R. 753, 761-762 (1981); *Pagán Hernández v. U.P.R.*, 107 D.P.R. 720, 732 (1978); *Bolker v. Tribunal Superior*, 82 D.P.R. 816, 824 (1961).

Es por ello que se activará la defensa cuando "ambos litigios versen sobre idéntico objeto". Manresa, *supra*, pág. 299. Para determinar la identidad de cosas u objetos, deberán examinarse no sólo las acciones esgrimidas, sino los fundamentos del dictamen que se intenta oponer como cosa juzgada. En cuanto a la causa, la doctrina vigente señala que ésta equivale al "fundamento o razón de pedir". Manresa, *supra*, págs. 301 y 305.

La jurisprudencia ha aclarado que para constituirse el requisito de identidad de causas se necesita que "la nueva acción estuviera embebida en la primera, o fuese consecuencia inseparable de la misma". *Acevedo v. Western Digital Caribe, Inc.*, *supra*; *Rodríguez Rodríguez v. Colberg Comas*, 131 D.P.R. 212 (1992). Basta que el segundo proceso se trate del mismo asunto que el primero, "aunque en el uno se abordase totalmente y sólo parcialmente en el otro". *Rodríguez Rodríguez v. Colberg Comas*, *supra*.

Respecto a la identidad de partes en la defensa de cosa juzgada y en su modalidad de impedimento colateral por sentencia, la jurisprudencia interpretativa "sigue la regla de la mutualidad, que prohíbe la alegación de cosa juzgada contra una parte... a menos que ésta fuera parte original o se hallare en relación mutua (privity) con otra". *Rodríguez Rodríguez v. Colberg Comas*, *supra*.

El Artículo 1204 del Código Civil, *supra*, "consagra la regla de mutualidad o identidad". *A. & P. Gen. Contractors v. Asoc. Caná*, *supra*, pág. 761. Esta regla señala que existe jurídicamente identidad de partes, aunque no sean físicamente las mismas las que litiguen en los dos pleitos, cuando la que "litiga en el segundo pleito ejercita la misma acción e invoca iguales fundamentos y se apoya en los mismos títulos que en el primero", pues ello configura la solidaridad jurídica entre los demandantes contenida en el Artículo 1204,

*supra. A. & P. Gen. Contractors v. Asoc. Caná, supra*, pág. 766.

Si existe identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron, en el pleito posterior no se podrán levantar las cuestiones litigiosas que se adjudicaron en el primer pleito y tampoco "aquellas cuestiones que pudieron haber sido litigadas y adjudicadas con propiedad en la acción anterior". *Capó Sánchez v. Srio. de Hacienda*, 92 D.P.R. 837, 839 (1965); *Pagán Hernández v. U.P.R.*, *supra*, págs. 732-733.

La defensa de cosa juzgada "está fundada en consideraciones de orden público y necesidad". *Pérez v. Bauzá*, 83 D.P.R. 220, 225 (1961). El propósito medular que persigue la aplicación de dicha defensa, así como su modalidad de impedimento colateral por sentencia, es ponerle fin a los litigios, evitar que se eternicen las cuestiones judiciales y que se someta en dos ocasiones a un ciudadano a las molestias que supone litigar la misma causa. *Municipio v. Bosque Real, S.E.*, *supra*; *Pérez v. Bauzá*, *supra*; *Pagán Hernández v. U.P.R.*, *supra*, pág. 732; *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). Por otro lado, nuestro ordenamiento interesa "promover la economía judicial y administrativa al evitar litigios innecesarios y evitar decisiones inconsistentes". *Rodríguez Rodríguez v. Colberg Comas*, *supra*; *A. & P. Gen. Contractors v. Asoc. Caná, supra*, pág. 761.

La doctrina de cosa juzgada se fundamenta, además, en la necesidad de garantizar "la certidumbre y seguridad de los derechos declarados por resolución judicial". De esta forma, se persigue "conservar la paz privada", *Lausell Marxuach v. Díaz de Yáñez*, 103 D.P.R. 533, 536 (1975), y "dar la debida dignidad a las actuaciones de los tribunales", *Bolker*, *supra*, pág. 832.

Como es sabido, para que pueda invocarse la defensa de cosa juzgada se requiere que la sentencia que se opone sea válida, final y firme. *Marrero v. Vázquez*, 135 D.P.R. 174 (1994); *Bolker*, *supra*, pág. 825; Manresa, *supra*, pág. 285.

Sin embargo, esta doctrina no es de aplicación absoluta. Se le han reconocido definidas excepciones en ley y equidad. *Pérez v. Bauzá*, 83 D.P.R. 220 (1961). De ahí que el Tribunal Supremo haya declinado aplicarla inflexiblemente, sobre todo cuando se enfrenta a controversias que requieren consideraciones de orden público, o cuando su aplicación derrotaría los fines de la justicia y produciría resultados absurdos. *Blas v. Hosp. Guadalupe*, 146 D.P.R. 267 (1998); *Parrilla v. Rodríguez y otros*, 163 D.P.R. 263 (2004); *Mercado Rivera v. Mercado Riera*, 100 D.P.R. 940 (1972).

### III

El señor Alicea nos señala que la Ley Núm. 426, *supra*, no es de aplicación a este caso, por lo que no procedía la concesión al apelado de los remedios provistos por dicho estatuto. Añade que erró el foro de instancia al adjudicarle responsabilidad, en su carácter personal, por la separación del apelado del puesto que ocupaba en la CCBA, toda vez que dicha determinación no fue tomada por él. Por último, arguye que erró el TPI al permitirle al apelado relitigar su caso, toda vez que la J.A.S.A.P. había emitido una resolución en la que se decretó el archivo de la apelación instada por el apelado cuestionando la determinación de la CCBA y que nunca fue apelada. Señala que siendo dicha determinación una final y firme, procedía la aplicación de la doctrina de cosa juzgada y, en consecuencia, la desestimación de la demanda presentada por el apelado.

La CCBA, por su parte, alega que el despido del apelado respondió a que su nombramiento era nulo. Añade que la prueba presentada ante el foro de instancia no demostró que dicho despido haya sido por motivo de represalias.

Por su parte, el apelado señala que, en efecto, su despido fue como resultado de haber denunciado la conducta impropia del señor Alicea con respecto al uso de las computadoras del CCBA. Señala, además, que

probó ante el TPI, de manera fehaciente, todas las humillaciones y angustias mentales que dicha acción le causó.

Del análisis de los alegatos sometidos por las partes y del derecho aplicable, concluimos que al señor Alicea le asiste la razón y que, en efecto, es de aplicación la doctrina de cosa juzgada. Veamos.

El 22 de noviembre de 2002, el apelado recurrió *pro se* ante la J.A.S.A.P de la determinación de la CCBA en la que se le separaba del puesto que ocupaba en dicho organismo. En lo pertinente señaló que:

"*Mediante la presente, apelo tal determinación por entender que tal determinación me ha despojado de mi interés propietario. Se ha violentado al derecho a un debido proceso de Ley y la acción en [sic] una arbitraria, caprichosa y es infundada por el Interés [sic] del Gerente General de discriminar contra mi persona.*"

Así las cosas, el 22 de enero de 2003, la CCBA contestó la referida apelación. No obstante, estando el caso pendiente de adjudicación ante la J.A.S.A.P., el apelado presentó ante el TPI una demanda sobre daños y perjuicios contra la CCBA, la señora Carmen H. Martínez, Directora de Recursos Humanos de la CCBA, y el señor Alicea. Alegó que fue separado de su empleo en la CCBA "como punto culminante de un patrón de represalias por éste denunciar la violación de política pública del [E]stado por parte del Gerente General de la Corporación del centro de Bellas Artes[,] el codemandado Carlos Alicea". Específicamente, señaló que fue despedido porque "denunció la utilización de fondos y recursos de la [Corporación] por parte del Gerente General Carlos Alicea para tener y obtener acceso a material sexual de índole pornográfico".

En el ínterin, y ante la inacción del apelado, la J.A.S.A.P. emitió una orden para que éste mostrara causa por la cual no debía desestimarse su apelación. El apelado nunca cumplió con la referida orden, por lo que el 24 de mayo de 2004, la J.A.S.A.P. emitió una resolución archivando la apelación. Toda vez que nunca se apeló dicha determinación, la misma se convirtió en final y firme.

Expuesto lo anterior, comencemos por señalar que las reclamaciones en ambos pleitos se originan o son producto del mismo hecho, el despido alegadamente discriminatorio por razón de represalias, por lo que está presente el requisito de identidad entre las cosas. Sobre dicho requisito, el Tribunal Supremo, en *Mercado Riera v. Mercado Riera, supra,* citando a Scaevola, *Código Civil,* Tomo XX, pág. 534 (2da ed., 1958), expresó lo siguiente:

"Puede tratarse de la absoluta identidad, en el sentido de que el segundo pleito se refiera a la finca u objeto mismo sobre que versó el primero, pero, en general, **basta que se refiera al mismo asunto, aunque en el uno se abordase totalmente y sólo parcialmente en el otro,** y aunque las cosas hayan sufrido disminución o alteración, desde el primero al segundo, que afecte su valor o alguna otra de sus condiciones." (Énfasis nuestro).

También están presentes los requisitos de identidad entre los litigantes y la calidad conque lo fueron, debido a que tanto en el foro administrativo como en el judicial, el apelado reclamaba contra la CCBA.

Ahora bien, en cuanto a la causa, ésta ha sido definida como "el motivo de pedir". *A & P Gen. Contractor v. Asoc. Caná, supra,* pág. 765, citando a Scaevola, *Código Civil,* Segunda ed., 1958, Tomo XX, 535. En otras palabras, significa "el fundamento capital, el origen de las acciones o excepciones planteadas y resueltas...". *Lausell Marxuach v. Díaz de Yáñez, supra.* En ambos pleitos, la causa, es decir, la "razón para pedir", se originó en el alegado discrimen por razón de represalias.

Nótese que en este caso concurren la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron, por lo que es de aplicación la doctrina de cosa juzgada. Como mencionáramos, el propósito medular que persigue la aplicación de dicha defensa es ponerle fin a los litigios,

evitar que se eternicen las cuestiones judiciales y que se someta en dos ocasiones a un ciudadano a las molestias que supone litigar la misma causa. *Municipio v. Bosque Real, S.E., supra; Pérez v. Bauzá, supra; Pagán Hernández v. U.P.R., supra.* A raíz de lo anterior, el apelado estaba impedido de relitigar el caso.

No obstante, es preciso señalar que una vez el apelado presenta su demanda ante el TPI no alerta al mismo de la existencia del procedimiento administrativo. Más aún, no es hasta que la CCBA advierte sobre la existencia de la resolución de la J.A.S.A.P., que el apelado se expresó en torno a ésta. Sin embargo, y como bien señala la CCBA, éste pretendió restarle importancia a la misma requiriéndole que no la tomara en cuenta, señalando mediante una declaración jurada, sin evidencia alguna, que "no fue citado a vista o proceso alguno en dicho foro administrativo y que no solicitó reconsideración o apelación de la resolución emitida por él mismo porque no tenía dinero para pagar un abogado." Véase Anejo XIX. Olvida el apelado que estando el caso pendiente de adjudicación ante la J.A.S.A.P., y sin haber agotado todos los remedios administrativos, instó una demanda ante el TPI por medio de representación legal, por lo que dicho argumento es inmeritorio por demás. Era la J.A.S.A.P. (ahora CASARH) quien estaba llamado a dilucidar si, en efecto, el nombramiento del apelado era nulo o, si por el contrario, su despido obedeció a otras razones.

## IV

Por los fundamentos antes expuestos, se revoca la Sentencia apelada y se desestima la demanda presentada por el apelado.

Notifíquese.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones

**ESCOLIOS 2009 DTA 105**

**1.** Es menester señalar que para esa fecha, otros veintidós empleados de la CCBA también fueron separados de sus puestos debido a que sus nombramientos resultaron ser nulos. Mediante la Ley Núm. 184 de 3 de agosto de 2004, la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público sustituyó a la J.A.S.A.P.

**2.** Véase KLCE-2006-01747.

**3.** Ley de Personal del Servicio Público, vigente para cuando el apelado fue separado de su puesto en el CCBA.